OPINION OF THE COURT
Ingrid Joseph, J.
Plaintiff Yulia C. commenced this matrimonial action by the filing of a summons and verified complaint on May 20, 2014. The defendant Angelo C. was personally served on July 25, 2014 but has failed to interpose an answer. The plaintiff filed a note of issue for an uncontested divorce on September 11, 2014. The matter was referred to this court because the issues of custody and child support were unresolved regarding three-year-old twin girls, A.K. and R.K., who were born during the marriage. Plaintiff’s motion, submitted on default, seeks a declaration of paternity and that the court (1) grant her sole physical and legal custody of the subject children, (2) issue an order declaring that a nonparty, R.R., is the biological father of the children, and (3) issue an order that defendant husband is not the biological or legal father and, thus, has no parental rights.
In her affidavit in support of the motion, plaintiff explains that she was unable to conceive naturally but always wanted a family. Plaintiff claims that the defendant abused heroin and alcohol throughout the marriage and, therefore, he was not a viable candidate for in vitro fertilization (IVF). Plaintiff contends that the defendant used her desire to be a mother as an instrument of abuse and manipulation and also abandoned her for long periods of time during stints of rehabilitative treatment. The plaintiff claims that she underwent in vitro fertilization treatment independently and without the knowledge or consent of the defendant. She maintains that the defendant is not the biological father of the subject children; has never held himself out to be the children’s father; and never attempted to establish a relationship with them.
In further support of the motion, plaintiff annexed a letter from Mudar Dalloul, M.D., an OB-GYN physician, who stated that the plaintiff underwent in vitro fertilization at New Hope Fertility Center located in New York, New York. Dr. Dalloul indicated that the plaintiff has been his patient since June 2011 and that the procedure resulted in the births of A.K. and R.K. The plaintiff submitted multiple documents on New Hope letterhead, including registration, consent forms, and a HIPAA authorization form that purportedly bear the plaintiff and the *874 alleged biological father, R.R.’s, signatures. Plaintiff included a document entitled “Consent for Embryo Transfer” that references the plaintiff and R.R. as patient and partner, and she submitted uncertified copies of the children’s birth certificates. The birth certificates reflect that R.K. and A.K. were born on March 29, 2013. The plaintiff is listed by her maiden name in the field provided for “mother,” and the field wherein the father’s name should be provided is blank on both birth certificates.
The defendant husband, who has not filed an answer or appeared in this action, reiterated in a notarized letter that was submitted with the plaintiff’s moving papers, that he did not approve of or participate in the plaintiff’s IVF process. He denied any form of parental rights as it pertains to the children and stated that he will “never seek any form of parental rights in the future.”
At common law, a child born to a married woman was presumed to be the child of her husband, and the husband was afforded legal paternity of that child (Anonymous v Anonymous, 1991 WL 57753 [Sup Ct, NY County, Jan. 18, 1991]). This presumption, first enunciated by Lord Mansfield, in Goodright v Moss (98 Eng Rep 1257, 2 Cowp 591 [1777]), was one of the strongest and most persuasive known to law (.Matter of Find-lay, 253 NY 1, 7 [1930]). It could only be rebutted by clear and convincing evidence, as corroborated by a third person, that the husband was either impotent, or extra quatuor maria, beyond the four seas, during the crucial period of gestation (Anonymous v Anonymous, 1991 WL 57753, *2 n 10 [Sup Ct, NY County, Jan. 18, 1991], citing 1 Blackstone, Commentaries on the Common Law of England, ch 16 at 445 [1765]). The rigid evidentiary standard in relation to questions of legitimacy was applied to protect a child born during marriage from being bastardized (Cross v Cross, 3 Paige Ch 139 [1832]; Van Aernam v Van Aernam, 1 Barb Ch 375 [1846]). “However, over time this presumption has eroded, and the ability to rebut it has increased, particularly since the development of highly accurate blood tests” (Anonymous, 1991 WL 57753, *2).
The New York Legislature enacted Domestic Relations Law § 73 to address issues of paternity that arose when a married woman conceived a child via artificial insemination. The statute provides, that any child born to a married woman by means of artificial insemination performed by persons duly authorized to practice medicine and with the consent in writ *875 ing of the woman and her husband, shall be deemed the legitimate, natural child of the husband and his wife for all purposes (Domestic Relations Law § 73).
Though the statute is intended to give certainty to the legitimacy of children, parties in matrimonial proceedings have attempted to utilize the statute to obtain a contrary result. The Third Department addressed this issue in the case of Laura WW. v Peter WW. (51 AD3d 211, 213 [3d Dept 2008]). In Laura, the wife conceived the parties’ third child via artificial insemination. A few months into her pregnancy, the parties executed a separation agreement, which provided that the husband would not be financially responsible for the third child. Despite their agreement, the wife alleged in her complaint for divorce that the child was the issue of the marriage. The parties executed a stipulation that reiterated the terms previously agreed to in the first agreement, whereby the husband’s child support calculation was based upon two rather than three children. The Supreme Court, having found that the provision was void as against public policy, appointed a Law Guardian for the third child and held a hearing on the issue of paternity. Following the hearing, the Supreme Court found that the husband was the child’s legal father and it modified the parties’ separation agreement to the extent of increasing the husband’s child support obligation to include all of the children. On appeal, the husband invoked noncompliance with the statutory prerequisites of Domestic Relations Law § 73 as a bar to a finding that he was the legal father. The Third Department gave no credence to that argument. Recognizing its obligation to protect the best interest of the child, the Court explained that failure to comply with Domestic Relations Law § 73 is neither determinative nor conclusive on the issue of whether the husband is the legal father of the child. Applying the common-law presumption of legitimacy in tandem with New York’s strong policy in favor of legitimacy, the Court found that the husband failed to establish that he took any steps before artificial insemination was performed to demonstrate that he was not willing to be the child’s father.
The facts of this case do not fit neatly within the rules set forth in Domestic Relations Law § 73, because the plaintiff utilized in vitro fertilization to conceive the subject children rather than artificial insemination. The New York State Task Force on Life and the Law issued a report in 1998 entitled, Assisted Reproductive Technologies, Analysis and Recommenda *876 tions for Public Policy, wherein it recommended, inter alia, that the legislature amend Domestic Relations Law § 73 to protect the legitimacy of children born to married couples by any means of assisted reproduction. The Surrogate’s Court Advisory Committee in its 2015 report recommended essentially the same changes. To date, the legislature has not amended the statute. However, the policy goal of protecting the legitimacy of children born to married couples via alternative reproductive methods is the ultimate guidepost for the existing and developing legal framework on the issue. Therefore, the instant motion, to the extent that it involves the legitimacy, or lack thereof, of A.K. and R.K., who were born during the plaintiff’s marriage to the defendant, will be viewed with an eye toward preserving their legitimacy.
After careful review of all of the evidence submitted, the court finds that the plaintiff has failed to proffer sufficient admissible evidence for this court to conclusively determine as a matter of law the critical issues of paternity, parental rights and custody. The registration and medical documents from New Hope Fertility Center are mere hearsay and, thus, do no establish that the plaintiff even underwent an in vitro fertilization procedure that resulted in the births of A.K. and R.K. Dr. Dalloul’s letter is neither in the form of an affirmation nor affidavit and was not sworn to under the penalties of perjury. The defendant husband, who has not appeared in this divorce proceeding, stated unequivocally in an unsworn, notarized letter that he did not participate in plaintiff’s in vitro fertilization procedure. He denied “any form of parental rights” and stated that he “will never seek . . . any form of parental rights in the future.” Despite these disclaimers, the defendant husband failed to address whether he ever, at any point before the children were conceived, approved of his wife undergoing in vitro fertilization.
There is insufficient evidence to address those branches of the plaintiff’s motion requesting sole custody and a declaration that her alleged partner, R.R., is the biological father of A.K. and R.K. The court’s paramount concern as it relates to custody is to determine, under the totality of circumstances, what is in the best interests of the children, and what will best promote their welfare and happiness (Eschbach v Eschbach, 56 NY2d 167 [1982]). There are no absolutes in making that determination; however, the decision must be based upon sound and substantial evidence (Matter of Louis M. v Administration for *877 Children’s Servs., 69 AD3d 633 [2d Dept 2010]). Here, the plaintiff has failed to proffer even a scintilla of objective, scientific evidence in admissible form to establish that the children were conceived via in vitro fertilization using R.R.’s biological material. Furthermore, R.R. is not a party to this action, nor is there a showing that the plaintiff served notice of the instant motion upon R.R.
Accordingly, the plaintiff’s order to show cause is denied in all respects.